<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                          :
D.M. and K.M. o/b/o R.M.,                 :
                                          :
            Plaintiffs,                   :
                                          :        Civil Action No. 05-3589 (JAG)
                  v.                      :
                                          :              **OPINION**
OAKLAND BOARD OF EDUCATION,               :
                                          :
            Defendant.                    :
_____:


<u>GREENAWAY, JR., U.S.D.J.</u>

This matter comes before this Court on Defendant Oakland Board of Education's

("Defendant or Board") motion for summary judgment, and on Plaintiffs D.M. and K.M. o/b/o

R.M.'s ("Plaintiffs") cross-motion for summary judgment, pursuant to FED. R. CIV. P. 56.  For

the reasons set forth below, Defendant's motion for summary judgment is granted in part, and

denied in part, without prejudice, and Plaintiffs' cross-motion for summary judgment is granted

in part, and denied in part, without prejudice.

<u>BACKGROUND</u>

This Individuals with Disabilities Education Act ("IDEA") case concerns compensatory

education for R.M., and reimbursement for educational costs to D.M. and K.M., for the time

period of October 1, 2001 to August 31, 2003.  The gravamen of this appeal is the decision of the

Administrative Law Judge ("ALJ"), Robert J. Giordano ("Judge Giordano"), granting the

1

Board's motion to dismiss Plaintiffs' claims for reimbursement arising prior to September 1, 2003, on the ground that such claims are time barred, as established in Bernardsville Bd. of Educ.v. J.H. and E.H. o/b/o J.H., 42 F.3d 149 (3d Cir. 1994) (holding that it is unreasonable for parents to delay seeking relief for more than one year, unless there are mitigating circumstances).

R.M., the minor child of D.M. and K.M., has been classified Autistic and is eligible for special education and support services, pursuant to the IDEA, 20 U.S.C. § 1400, et seq., and N.J. ADMIN. CODE § 6A:14-1.1, et seq. (Pls.' Counter Statement of Material Facts ("Pls.' SOF"), at ¶¶ 1, 2.) At all relevant times related to this action, Plaintiffs resided at 30 Hillside Avenue in Oakland, New Jersey, which is within the geographic area served by the Board. (Pls.' SOF ¶ 2.) The Board is the legally constituted body corporate responsible for the conduct and supervision of schools in Oakland, New Jersey, pursuant to N.J. STAT. ANN. § 18A:10-1, et seq., and it is the local education agency obligated to observe the requirements of the IDEA, pursuant to 20 U.S.C. § 1401(19). (Pls.' SOF ¶ 3.) At all relevant times related to this action, the Board was responsible for providing R.M. with a free appropriate public education ("FAPE") in the least restrictive environment. (Pls.' SOF ¶ 4.)

On December 24, 2002, Plaintiffs filed a petition for due process (hereinafter the "2002 Petition"), which objected to the Board's proposed individual education program ("IEP") for the 2002-2003 school year, and also sought reimbursement and compensatory education dating back to October 2001, when Plaintiffs moved within the boundaries of the Oakland School District (the "District"). (Def.'s Statement of Facts ("Def.'s SOF"), at ¶¶ 1, 2.) Plaintiffs' current counsel, Beth Callahan, withdrew the 2002 Petition on March 19, 2003, one day before the first scheduled hearing date. (Def.'s SOF ¶ 4.) Ms. Callahan's March 19, 2003 correspondence to the

2

ALJ assigned to adjudicate the 2002 Petition, indicated that she would be "refiling on behalf of [R.M.] in the near future."  (Id.)

On May 2, 2003, the Board filed a due process petition against Plaintiffs, seeking to compel authorizations to conduct re-evaluations required by N.J. ADMIN. CODE § 6A:14-3.8(g). (Def.'s SOF ¶ 5.)  On June 26, 2003, Plaintiffs filed a cross-petition ("2003 Petition") pertaining solely to matters involving R.M.'s 2003 extended school year ("2003 ESY").  (Def.'s SOF ¶ 6.) The ALJ denied Plaintiffs emergent relief under the 2003 Petition, and scheduled the matter for a plenary hearing.  (Def.'s SOF ¶ 7.)  The parties ultimately agreed to evaluations and the Board's due process petition was withdrawn.  (Id.)

On December 11, 2003, the parties appeared for a due process hearing on the issue of R.M.'s 2003 ESY.  (Def.'s SOF ¶ 8.)  Plaintiffs had removed R.M. from his neighborhood school and unilaterally placed him in a private kindergarten class.  (Id.)  At this point, Plaintiffs due process petition did not then include any claim related to the private kindergarten placement. (Id.)  At Plaintiffs' request, the December 11, 2003 hearing, which related to the 2003 ESY, was converted into a settlement conference relating to the private kindergarten placement, and other issues pertaining to R.M.'s 2003-2004 IEP.  (Id.)  After placing the settlement terms on the record, the ALJ directed that a written settlement agreement be submitted and executed by the parties.  (Id.)  Despite the Board drafting a settlement agreement, Plaintiffs refused to execute it. (Id.)  The ALJ also directed Plaintiffs to file an amended petition, by December 16, 2003, setting forth any additional claims (other than the 2003 ESY) that were at issue.  (Def.'s SOF ¶ 9.)

As a result of Plaintiffs' failure to execute the settlement agreement, the Board filed a motion to compel settlement, and the ALJ ordered settlement on May 13, 2004.  (Def.'s SOF ¶

10.)

On September 1, 2004, Plaintiffs filed their third petition for due process (the "2004 Petition"), which challenged the Board's proposed IEP's as far back as October 2001, and sought reimbursement and compensatory education. (Def.'s SOF ¶¶ 11, 12.) The Board filed a motion to dismiss Plaintiffs' claims arising before September 1, 2003, on the ground that they were time barred, and on April 19, 2005, the ALJ granted the Board's motion. (Def.'s SOF ¶¶ 14, 15.) As a result, Plaintiffs instituted the present action, seeking to reverse the ALJ's April 19, 2005 decision. (Def.'s SOF ¶ 16.)

## STANDARD OF REVIEW

Any party aggrieved by a decision made under the IDEA by a state educational agency has a right to bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). This court has jurisdiction over those actions "without regard to the amount in controversy." 20 U.S.C. § 1415(i)(3)(A).

The IDEA provides that when a federal district court reviews an administrative adjudication the court: (i) shall receive records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(C). "Thus, a court reviewing a state agency decision under the IDEA does not adopt a traditional summary judgment standard of review." Keystone Central Sch. Dist. v. E.E. ex rel. H.E., 438 F. Supp. 2d 519, 522 (M.D.Pa. 2006).

In IDEA cases, a district court is required to give "due weight" to the factual findings in state administrative proceedings. See Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982). The

Third Circuit has further defined "due weight" as "modified *de novo*" review.  S.H. v. State-Operated Sch. Dist., 336 F.3d 260, 270 (3d Cir. 2003).  Under this modified de novo review, "'a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings.'"  Id. (Quoting Knable v. Bexley City Sch. Dist., 238 F.3d 755, 764 (6th Cir. 2001)).  For questions of law, a district court applies a de novo standard to the review of administrative decisions in IDEA cases.  See P.N. v. Greco, 282 F. Supp. 2d 221, 235 (D.N.J. 2003) (citing L.M. ex rel. H.M. v. Evesham Twp. Bd. of Educ., 256 F. Supp. 2d 290, 295 (D.N.J. 2003)).

## DISCUSSION

Plaintiffs seek reimbursement and compensatory education for the time period of October 1, 2001 to August 31, 2003.  Defendant maintains that Plaintiffs' claims arising prior to September 1, 2003, are time barred, pursuant to the one year limitation of actions established in Bernardsville Bd. of Educ. v. J.H. and E.H. o/b/o J.H., 42 F.3d 149 (3d Cir. 1994).

The ALJ found that although Plaintiffs did in fact reserve the right to assert any and all claims related to compensatory education and reimbursement for services from October 2001 to the end of August 2003, during the settlement conference on December 11, 2003, the Board did not waive the defense of a limitation of action.  The ALJ further found that Plaintiffs' argument that the Board was equitably estopped from asserting the defense of an equitable limitation of action was without merit because the record was devoid of any basis for finding that the conduct of the Board had in any way "lulled" the Plaintiffs into inaction, or that the Board had engaged in knowing and intentional misrepresentation.  The ALJ further found that Plaintiffs' reliance on the

5

doctrine of unjust enrichment was misplaced, as the assertion that the Board retained any right to which it was not entitled was wholly unsupported by the record.  Finally, the ALJ found that Plaintiffs' reliance on the timely filing of the 2002 Petition was unwarranted, as that petition was subsequently withdrawn in March 2003.  In light of the above findings, the ALJ determined that in applying the limitation of actions established by the <u>Bernardsville</u> court, Plaintiffs' claims for reimbursement arising prior to September 1, 2003, were time barred.[1]

 In the present action, Plaintiffs argue that the ALJ erred in his application of <u>Bernardsville</u>, and in his decision regarding equitable estoppel and unjust enrichment.  Plaintiffs further argue that even if a limitation of action applies to this matter, the ALJ erred by dismissing Plaintiffs' claims from September 2002 to August 2003.  Finally, Plaintiffs argue that the ALJ erroneously concluded that Plaintiffs' compensatory education claims were also barred by the <u>Bernardsville</u> holding.  Each of these arguments will be addressed in turn.

**A.** **Equitable Limitation of Actions**

 In <u>Bernardsville</u>, the parents of J.H. sought reimbursement for private school tuition incurred before they had officially petitioned for an administrative hearing, but after the district had been made aware of their displeasure.  42 F.3d at 153.  Nonetheless, the district's notice of the parents' discontent was not enough to preserve the parents' right to tuition reimbursement. The court found that reimbursement was barred as untimely for the two years preceding the parents' request for an administrative hearing.  <u>Id</u>. at 151, 157-60.  In short, the court held that review proceedings initiated more than one year from the unilateral placement for which reimbursement is sought, without mitigating excuse, constitutes an unreasonable delay.  42 F.3d

---

[1]The ALJ did not address specifically the Plaintiffs' claims for compensatory education.

at 158.

However, the Bernardsville court, in a balancing of the equities, did allow the parents to recover reimbursement for one year of tuition, the year following the parents' petition for an administrative hearing, because J.H.'s parents had "adequately placed in issue their dissatisfaction with J.H.'s IEP for purposes of reimbursement at the time they requested an administrative hearing" and because "[d]ue process procedures were not activated at that time only because the parties were attempting to negotiate a settlement." Id. at 160.

Plaintiffs argue that through a combination of the 2002 Petition, the 2003 Petition, the December 11, 2003 settlement conference, and subsequent settlement negotiations, the Board was indisputably on notice of their intention to file for due process if a settlement could not be achieved, and that the settlement conference and subsequent settlement negotiations therefore constitute mitigating circumstances, which tolled the equitable limitation of actions.[2]  In essence, Plaintiffs argue that their claims are not time barred because mitigating circumstances permit them to bring their claims more than a year from the provision of those services for which they

_____

[2]This particular argument was not presented to the ALJ, thus there are no previous findings in the record that need be addressed here.  The ALJ's decision focused on Plaintiffs' argument that their reservation of the right to assert any and all claims related to compensatory education and reimbursement for services from October 2001, to the end of August 2003, at the December 11, 2003 settlement conference, essentially amounted to a waiver of the defense of a limitation of action by the Board.  The ALJ, after having heard and considered the terms and conditions of the settlement agreement reached on December 11, 2003, determined "that there was no waiver of the defense of a limitation of action by the Board at the time."  (ALJ Opinion dated April 19, 2005 attached to Certification of John T. Sullivan ("Sullivan Cert."), at ¶ 15, Ex. L at 11.)  This Court agrees.  Plaintiffs have failed to point to any evidence in the record supporting their claim that the Board waived the defense of a limitation of action in the settlement agreement.  Having reviewed the record before this Court, giving some deference to the ALJ's findings of fact, and based on a preponderance of the evidence, this Court concludes that Plaintiffs' reservation of rights did not amount to a waiver of the defense of a limitation of action by the Board.

seek reimbursement.

Plaintiffs' argument is without merit.  First, Plaintiffs withdrew the 2002 Petition in March of 2003, and therefore cannot rely on that petition as having provided the Board notice of their claims.  Second, the 2003 Petition pertained solely to matters involving R.M.'s 2003 ESY, and therefore cannot constitute notice to the Board of Plaintiffs' claims for compensatory education and reimbursement for services from October 2001, to the end of August 2003.  Third, during the December 11, 2003 settlement conference, Plaintiffs merely reserved the right to assert "any and all claims related to compensatory education and reimbursement for services from October 2001 to the end of August 2003," they did not put the Board on notice of their actual claims, as no formal petition was before the ALJ at the time the reservation was asserted. (ALJ Opinion dated April 19, 2005 attached to Certification of John T. Sullivan ("Sullivan Cert."), at ¶ 15, Ex. L at 11.)

Moreover, Plaintiffs were directed to bring a separate petition regarding any issues not part of the pending 2003 Petition, by December 16, 2003.  (Id.)  Yet, Plaintiffs did not file the separate petition until September 1, 2004.  Finally, although Plaintiffs appear to have engaged in some settlement negotiations after December 11, 2003, it is unclear whether those negotiations included Plaintiffs' claims related to reimbursement and compensatory education from October 2001 to August 31, 2003.

Here, although the Board was arguably on notice that Plaintiffs *might* pursue claims relating back to October 2001, unlike the plaintiffs in Bernardsville, it does not appear that the only reason due process procedures were not activated is because the parties were attempting to negotiate a settlement.  As such, the instant matter is distinguishable from the facts presented in

<u>Bernardsville</u>, and Plaintiffs have failed to advance a convincing argument that mitigating circumstances should toll the limitation of actions set out in <u>Bernardsville</u>.  Therefore, Plaintiffs' claims for reimbursement arising prior to September 1, 2003, are time barred.[3]

**B.     Equitable Estoppel**

Plaintiffs argue that the ALJ erred in determining that the Board was not equitably estopped from asserting the defense of a limitation of actions.  In essence, Plaintiffs assert that the Board lulled them into believing litigation would not be necessary because the parties were engaged in settlement negotiations, and because the Board agreed that Plaintiffs would reserve their rights to pursue claims for reimbursement and compensatory education for services prior to September 2003.

"'Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law.'"  <u>Knorr v. Smeal</u>, 178 N.J. 169, 178 (N.J. 2003) (citing <u>Casamasino v. City of Jersey City</u>, 158 N.J. 333, 354 (N.J. 1999)).  The purpose of the doctrine is to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his

---

[3]Plaintiffs' second argument regarding mitigating circumstances is equally unconvincing. Plaintiffs argue that Judge Giordano's December 11, 2003 and May 13, 2004 Orders constitute mitigating circumstances that toll any limitation of actions.  On December 11, 2003, Judge Giordano directed the Plaintiffs to file an amended petition including those claims not yet asserted, by December 16, 2003 (no actual Order was filed).  (Sullivan Cert. ¶ 15, Ex. L at 2.)  In Judge Giordano's May 13, 2004 Order, he stated that "[a]ny issues not raised therein shall not be considered unless there is a separate due process petition filed, subject to that petition being consolidated for hearing by the OAL."  (Sullivan Cert. ¶ 11, Ex. H at 4.)  Neither of Judge Giordano's directives constitute a mitigating circumstance that toll the limitation of actions period.  In the first instance, Plaintiffs were in fact directed to file an amended petition by a specific date, namely, December 16, 2003, which they failed to do.  In the second, Judge Giordano directed that in order for any issues not raised in the 2003 Petition to be considered, a separate due process petition must be filed.  At no point did Judge Giordano imply that the limitation of actions period would toll.

detriment.  <u>Knorr</u>, 178 N.J. at 178.  Estoppel is invoked in "'the interests of justice, morality and common fairness.'"  <u>Id</u>.  (Citing <u>Palatine I v. Planning Bd.</u>, 133 N.J. 546, 560 (N.J. 1993).  "Estoppel, unlike waiver, requires the reliance of one party on another."  <u>Knorr</u>, 178 N.J. at 178.  Thus, in order to establish equitable estoppel, "plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment."  <u>Id</u>.; <u>see also</u> <u>O'Malley v. Dep't of Educ.</u>, 109 N.J. 309, 316 (N.J. 1987) ("The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment.")  Equitable estoppel may be appropriate where "'a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation.'"  <u>W.V. Pangborne & Co. v. New Jersey Dep't of Transp.</u>, 116 N.J. 543, 553 (N.J. 1989) (citing <u>Lawrence v. Bauer Publishing & Printing, Ltd.</u>, 78 N.J. 371, 376 (N.J. 1976)).  Equitable estoppel is rarely invoked against public entities, "although it may be invoked to prevent manifest injustice."  <u>O'Malley</u>, 109 N.J. at 316.

The ALJ found that Plaintiffs' argument that the Board was equitably estopped from asserting the defense of a limitation of action was without merit.  The ALJ determined that the record was devoid of any basis for finding that the conduct of the Board had in any way "lulled" the Plaintiffs into inaction, or that the Board had engaged in knowing and intentional misrepresentation.

This Court agrees.  Plaintiffs' reliance on <u>W.V. Pangborne</u> is misplaced.  There is no evidence in the record supporting Plaintiffs' argument that the Board "lulled" them into believing

litigation was unnecessary due to the parties' settlement negotiations.  Furthermore, there is no evidence in the record that the Board "lulled" Plaintiffs into believing it was unnecessary for them to file a separate or amended due process petition addressing their claims for reimbursement and compensatory education for the time period from October 2001 through August 31, 2003.  In fact, it appears that the Board, via its counsel, made several requests in November 2003, that Plaintiffs amend the 2003 Petition prior to the hearings scheduled in December 2003.  (Def.'s Reply, Ex. F.)  Moreover, at the settlement conference on December 11, 2003, where the parties agreed that Plaintiffs reserved their right to pursue the above mentioned claims, Plaintiffs were specifically directed to file a separate petition addressing those claims by December 16, 2003.  In sum, Plaintiffs have failed to present evidence demonstrating that the Board "lulled" Plaintiffs into inaction, or that the Board engaged in knowing and intentional misrepresentation.

Having reviewed the record before this Court, giving some deference to the ALJ's findings of fact, and based on a preponderance of the evidence, this Court concludes that the Board was not equitably estopped from asserting the defense of a limitation of action.

**C.     Unjust Enrichment**

Plaintiffs argue that the ALJ erred in determining that the Board was not barred from asserting the defense of a limitation of action by the doctrine of unjust enrichment.  Plaintiffs assert that they conferred a benefit upon the Board by waiving their rights to thousands of dollars that they spent from September 2003 through December 2003, in exchange for the preservation of their rights to pursue reimbursement and compensatory education from October 2001 through August 2003.

11

"To establish unjust enrichment as a basis for quasi-contractual liability, 'a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust.'" Castro v. NYT Television, 370 N.J. Super. 282, 300 (N.J. Super. Ct. App. Div. 2004) (citing VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (N.J. 1994)).  The unjust enrichment doctrine requires the plaintiff to show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant, and that the failure of remuneration enriched defendant beyond its contractual rights.  See VRG Corp., 135 N.J. at 554.

The ALJ found that Plaintiffs' reliance on the doctrine of unjust enrichment was misplaced, as the assertion that the Board retained any right to which it was not entitled was wholly unsupported by the record.  The ALJ further found that:

> [w]hat occurred was an arms length agreement, wherein both parties compromised in resolving some of the issues extant.  The remaining, unresolved issues were left to be considered at a plenary hearing.  Those issues not yet brought by way of petition, were to be pled in a petition to be filed by December 11 [sic][4], 2003.  There is no factual predicate extant for the application of the doctrine of unjust enrichment.

(Sullivan Cert. ¶ 15, Ex. L at 12.)

This Court agrees.  During the December 11, 2003 settlement conference, the parties agreed that R.M. would return to the District's kindergarten program and the District would provide certain specific educational services.  (Sullivan Cert. ¶ 11, Ex. H.)  In addition, the District agreed to reimburse Plaintiffs for R.M.'s placement at a private kindergarten.  (Id.)  Plaintiffs also reserved their right to pursue claims for reimbursement and compensatory education not addressed by the settlement agreement.  (Id.)  It appears

---

[4]The correct due date for the separate petition was December 16, 2003.

that both parties compromised in an effort to resolve some outstanding issues.  Plaintiffs

have failed to point to any evidence in the record demonstrating that the Board received a

benefit to which it was not entitled, or that the Board was enriched beyond its contractual

rights.

Having reviewed the record before this Court, giving some deference to the ALJ's

findings of fact, and based on a preponderance of the evidence, this Court concludes that

the Board was not barred by the doctrine of unjust enrichment from asserting a limitation

of actions defense.

**D.      Plaintiffs' Claims from September 2002 to August 2003**

Plaintiffs argue that even if a limitation of action applies to this matter, the ALJ erred by

dismissing Plaintiffs' claims from September 2002 through August 2003.  Plaintiffs assert that

Congress' December 2004 amendments to the IDEA, which resulted in the enactment of a formal

two-year statute of limitations for the initiation of due process proceedings, effective July 1, 2005

(see 20 U.S.C. § 1415(f)(3)(C)), should be applied to their claims for reimbursement and

compensatory education from September 2002 through August 2003.

Plaintiffs filed their petition on September 1, 2004, prior to the effective date of the

amendments.  Thus, they essentially seek retroactive application of the amendments.  However,

amendments to the IDEA have prospective application only.  See Lawrence Twp Bd. of Educ. v.

New Jersey, 417 F.3d 368, 370 (3d Cir. 2005).  Therefore, the one year limitation of actions set

out in Bernardsville was correctly applied to Plaintiffs' claims for reimbursement from

September 2002 through August 2003, and such claims are time barred.[5]

**E.      Compensatory Education Claims**

Plaintiffs argue that the ALJ erroneously concluded that Plaintiffs' compensatory

education claims for the time period from October 2001 through August 2003 were also barred

by the limitation of actions set out in Bernardsville.  In fact, Judge Giordano's decision does not

address specifically Plaintiffs' claims for compensatory education.  Judge Giordano held that in:

> [a]pplying the limitation of actions established by the Bernardsville Court, the
> claims for reimbursement raised in the September 1, 2004 petition, arising prior to
> September 1, 2003, are time barred.  Accordingly, it is therefore ORDERED that
> the motion on behalf of the Board, to dismiss claims for reimbursement arising
> prior to September 1, 2003, is and shall be GRANTED.

(Sullivan Cert. ¶ 15, Ex. L at 13.)

In light of the specific language of Judge Giordano's holding, it appears that no

determination regarding the application of a limitation of action was made with respect to

Plaintiffs' compensatory education claims for the time period from October 2001 through August

2003.

Under the IDEA, a disabled student is entitled to free, appropriate education until he or

she reaches age twenty-one.  See M.C. v. Cent. Reg'l Sch. Dist., 81 F.3d 389, 395 (3d Cir. 1996).

In M.C. v. Cent. Reg'l Sch. Dist., the court held that a district "that knows or should know that a

child has an inappropriate IEP or is not receiving more than a de minimis educational benefit

must correct the situation.  If it fails to do so, a disabled child is entitled to compensatory

education for a period equal to the period of deprivation."  81 F.3d at 397.  In reaching this

---

[5]As previously noted, the ALJ did not address Plaintiffs' claims for compensatory
education.

14

decision, the court reasoned that "a child's entitlement to special education should not depend on the vigilance of the parents." Id.

Under the IDEA, parents do not have the same rights as their disabled children. See Penn Trafford Sch. Dist. v. C.F. ex rel. M.F. and A.F., No. Civ. A. 04-1395, 2006 WL 840334, at *5 (W.D. Pa. March 28, 2006). In Penn Trafford, the court noted that "[w]hile the right to reimbursement belongs to the parents, the right to compensatory education belongs to the disabled child and thus it is appropriate that an equitable period of limitations apply to enforcement of the parents' rights, but not to enforcement of the child's rights." 2006 WL 840334, at *6. Thus, a child should not be deprived of its right to compensatory education based on the parents' inaction. Id. As such, "there is no equitable limitation on compensatory education." Id. at *7.

In light of the above, had Judge Giordano addressed Plaintiffs' compensatory education claims, Plaintiffs would be correct in their assertion that he erred in concluding that such claims were barred by the limitation of actions set out in Bernardsville. However, Judge Giordano failed to distinguish Plaintiffs' claims for reimbursement from their claims for compensatory education, and did not address their compensatory education claims in his holding. Therefore, that portion of this action relating to Plaintiffs' claims for compensatory education shall be remanded to the New Jersey Office of Administrative Law, to determine whether R.M. is entitled to compensatory education for the time period from October 1, 2001 through August 31, 2003.

## CONCLUSION

As required by the applicable standard, this Court has reviewed the record, as well as the

15

papers of the moving parties.  This Court has applied a <u>de novo</u> review of the ALJ's

determination that Plaintiffs' claims for reimbursement arising prior to September 1, 2003, were

time barred, and a modified <u>de novo</u> review of the ALJ's findings regarding waiver, equitable

estoppel, and unjust enrichment.  As such, this Court has concluded that the ALJ did not err in

his findings.  However, the ALJ did not differentiate between Plaintiffs' claims for

reimbursement and compensatory education.  Therefore, Defendant's motion for summary

judgment is granted in part, and denied in part, without prejudice.  Plaintiffs' cross-motion for

summary judgment is granted in part, and denied in part, without prejudice.  That portion of this

action relating to Plaintiffs' claims for compensatory education shall be remanded to the New

Jersey Office of Administrative Law.


Dated: September 21, 2006


                                        S/Joseph A. Greenaway, Jr.
                                        JOSEPH A. GREENAWAY, JR., U.S.D.J.

16